# CASES

## DECIDED IN THE

## COURT OF CHANCERY OF NEW-JERSEY,

## APRIL TERM, 1832.

---

### Maria Stafford v. James B. Stafford and Joseph B. Stafford.

Upon satisfactory proof of the execution and existence of a deed, and the oath of the party that it is lost, secondary evidence of the contents may be admitted.

Evidence going to show that a deed might have been obtained by fraud, misrepresentation, or deception, is not sufficient to support a bill charging that the deed is false, forged, and counterfeited.

THE principal object of this bill is to procure a decree of the court, declaring a certain deed of indenture, purporting to have been given by Joseph B. Stafford and the complainant, then being his wife, to the said James B. Stafford, false, forged, and of none effect.

The bill charges that William Holmes, the father of the complainant, died in 1821, and by his will gave to her "one third part of his whole estate." That in 1823, at the age of twenty years, she intermarried with Joseph B. Stafford ; who proved to be a man of grossly intemperate and dissolute habits, and soon dissipated her share of the personal property coming to her from her father's estate. That in consequence of his ill treatment she was obliged to quit his house, and, with an infant child, seek shelter in the house of her mother. In 1827 she applied for,

and obtained, a divorce *a vinculo matrimonii*, from the legislature.

That in 1825, the said Joseph B. Stafford, with a view to obtain possession of her share of the land derived under the will, applied to the chief justice for a partition, in the name of himself and the complainanant as his wife: that commissioners were appointed, who reported that the land could not be divided without injury and great prejudice to the owners, and thereupon they were directed to make sale of it, according to the provisions of the law.

That one James B. Stafford, the father of Joseph, under pretence of keeping the proceeds of the said sale safely for the use and benefit of the complainant, procured her signature to some writing, which he said was a power of attorney, to enable him to take charge of it: that afterwards, suspecting his intention, and that he was leagued with her husband to get the property in possession for his own benefit, she filed her bill in this court, praying an injunction to restrain the commissioners from paying the money to the said Joseph B. Stafford: that the injunction was granted, and remains in force to the present time.

The bill then charges, that the said James B. Stafford sets up against the complainant, a certain deed of indenture between Joseph B. Stafford and Maria his wife of the first part, and James B. Stafford of the other part; which deed is set out at length, and purports, for the consideration of one thousand dollars, to convey to the said James B. Stafford, his heirs, executors, administrators and assigns, for ever, all the interest of the said Maria Stafford, the complainant, of, in and to the property given her by the will of her father, William Holmes. The deed purports to have been acknowledged before Andrew Rowan, esquire, then a commissioner for taking the acknowledgment and proof of deeds, in and for the county of Middlesex, on the same day it bears date, viz. on the 25th of November, 1824. That on the 25th day of December, 1826, the said deed was recorded in the clerk's office of the county of Middlesex.

It is then further charged, that the said instrument purporting to be an indenture, and the writing purporting to be an acknowledgment before Andrew Rowan, esquire, are, and each of them

is, false, feigned, forged, and counterfeited; and that the names of the witnesses, and of the complainant, as one of the grantors, are also false, forged, and counterfeited; and also that the receipt, purporting to be for the consideration money, and which is endorsed on the said deed, is fraudulent and false, and only placed there to give an appearance of authenticity to the pretended transaction.

Against the effect of this conveyance, so set up by the said James B. Stafford, the complainant seeks to be relieved.

The answer of James B. Stafford denies expressly the charge, that the deed and acknowledgment are forged or fraudulent; and states, that after the marriage of his son, Joseph B. Stafford, with the complainant, and while they lived together, they frequently applied to him for assistance : that he made frequent and large advances to them for their benefit, and was called on to make more, which he refused to do unless secured : that thereupon the said Joseph B. Stafford and wife, with the view of obtaining further relief, voluntarily proposed and offered to sell and release to him all their remaining right under the will of William Holmes, deceased, the father of the said complainant: that being willing to oblige them, this defendant acceded to the proposal, and afterwards, viz. on the 25th of November, 1824, the conveyance was executed for the sum of one thousand dollars, bona fide paid and secured to be paid, and acknowledged before Andrew Rowan, esquire, commissioner. The defendant admits that the deed was not recorded until two years after its execution; and states that he procured an application to be made for a division of the real estate, in the names of Joseph B. Stafford and wife; and that the real estate, not being susceptible of division, was subsequently sold by the commissioners for fifteen hundred and ninety-seven dollars: that this was for his own benefit, and not for the benefit of the complainant and her husband. He denies that the complainant ever executed to him any letter of attorney, or any writing represented as such.

In further answering, the defendant states, that the original deed, with the acknowledgment on it, was in his possession at the time of the commencement of this suit, and was then shown by him to Andrew Rowan, esquire, the commissioner who took

the acknowledgment; but that the same has since that time been, by some casualty, mislaid or lost, and cannot now be found.

After issue joined, a number of witnesses were examined by the parties respectively; and the testimony being closed, the cause was submitted to the court without argument.

*S. R. Hamilton*, for complainant;

*H. W. Green*, for defendant.

THE CHANCELLOR.    If I rightly apprehend the case, there is but a single question involved in it, viz: whether the complainant, together with her husband, Joseph B. Stafford, did actually and in truth make a conveyance of all their interest in the estate of William Holmes, deceased, on or about the 25th day of November, 1824, and acknowledge the same before a competent authority, as is alleged by the defendant; or whether the instrument set up by the defendant, and purporting to be such conveyance, is false, forged, and counterfeited, as is charged by the complainant? How far fraud may have entered into the procurement of the instrument, or whether the consideration was bona fide, are questions not raised by the pleadings, and therefore not proper for the consideration of the court.

I propose to inquire, in the first place, what is the evidence to prove that there was actually a conveyance made by Joseph B. Stafford and wife to James B. Stafford, of the property now claimed.    Unfortunately for all parties, the original instrument has been lost or mislaid, and cannot now be produced, and secondary evidence must be resorted to.    That there was a paper once in existence, purporting to be a deed between the parties, is evident from the fact that it was recorded in the clerk's office of the county of Middlesex, in December, 1826.

It appears from a copy of the record, that the original was acknowledged before Andrew Rowan, esquire, one of the commissioners, &c. of the county.    He has been examined as a witness on the part of the defendant, and states, under oath, that he recollects taking the acknowledgment of the grantors,

Joseph B. Stafford and Maria his wife. The deed was to James B. Stafford, and he understood it to convey the right of Maria the wife, to the place on which her father had lived. Mrs. Stafford was present, and he made known the contents of the deed to her. This took place shortly after their marriage, and while they lived at Allentown, with James B. Stafford the father. The acknowledgment was taken at the time the certificate bears date. He further states, that he saw the deed in the winter of 1830. The certificate of acknowledgment was then upon it, and he knew his hand-writing signed to the acknowledgment. It was shown to him by James B. Stafford, and he then read the deed over.

This witness was of the age of eighty-two years when he was examined in 1830, and consequently must have been seventy-six years old when the acknowledgment was taken. It was attempted to be shown on the part of the complainant, that he was not at that time competent to take an acknowledgment, and that he was quite unequal to the transaction of business at the time he was examined. The attempt was not successful. He is proved, by various witnesses, to have been a smart man for his years, especially as it regarded the powers of his mind. On this point, the testimony of John Drummond, Sarah Smith Stafford, James Cook, and especially of Robert Z. Purdy, is very satisfactory. Mr. Purdy says he has been acquainted with him for thirty years, and lived near him; he used to be almost daily in the store of witness: that he moved to Bloomsbury in March, 1831, and that, just before he moved, the deponent had a settlement with him. Their dealings were of considerable extent, and several years standing. The old gentleman was perfectly able to do business; as capable as ever he was, and as competent to take an acknowledgment as he was several years before. It appears by the testimony of Drummond, that even after he moved to Bloomsbury, he retained his mental faculties to a great degree, and was competent to do business.

The evidence of Andrew Rowan is corroborated by that of his daughter, Sarah Drummond; who states, that she recollects James B. Stafford calling at her father's house in January, 1830, and that he produced a deed from Joseph B. Stafford and wife to

67

James B. Stafford. She saw the deed, and read it over; she noticed the signature to the acknowledgment: it was her father's hand writing. She had seen him write frequently, and was familiar with the hand.

The defendant has proved further, by Catharine Ann Beck, that she was present at the signing of the deed at Allentown by Joseph B. Stafford and his wife. It was cold weather, she thinks December, and six or seven years ago, (1824 or 1825.) It was signed in Mr. Stafford's office, after candle-light, and the property mentioned in it was the Holmes property. Joseph B. Stafford and wife were living at the time at his father's. This testimony is corroborated by that of Sarah Smith Stafford, the daughter of the defendant, who states, that Joseph and his wife removed from her father's on the 14th December, 1824, and that she was present at the execution of the deed. It was in her father's office, at candle-light. It was the latter part of November, 1824. Andrew Rowan was in the office when the deed was signed. Catharine Ann Beck was there, and also Edward Parent, Sydney P. Burden, and others.

The defendant then has shown, by two witnesses, that Joseph B. Stafford and the complainant executed a deed to James B. Stafford at Allentown, in the fall of 1824, in the evening; and that Judge Rowan was there that evening in the office. One of them states it to have been a deed for the Holmes property. He has produced a copy of a deed from the registry, agreeing in date and substance with the one described. He has shown by Judge Rowan that he at that time acknowledged such a deed; that the grantors were well known to him, and the contents of the deed were made known to the complainant before signing; that he has since seen the deed, and recognized his hand-writing to the acknowledgment; that the business was transacted at Allentown, before the complainant and her husband moved from his father's house.

This evidence, with the oath of the defendant, is satisfactory to show, that a deed was actually executed and acknowledged at the time and place alleged by the defendant in his answer; and it must prevail, unless the complainant shall be enabled to

April, 1832.

Stafford
v.
Stafford.

overcome it by other and more weighty proof, or show that the defendant's witnesses are not worthy of credit.

The complainant has called the persons whose names appear in the copy of the instrument as subscribing witnesses; and from the situation in which they stand to the defendant, (other things being equal,) their declarations are certainly entitled to great weight. Sydney P. Burden says, that about four years previous to the time of his examination, that is to say, in 1830, he thinks in the month of August, James B. Stafford came one day in great haste for him to sign his name as a witness to a deed. He went to Stafford's office. Stafford said he wanted to send it to New-Brunswick next morning. Witness went and signed his name under the name of Edward Parent. There was no one there but James B. Stafford and himself. Stafford said it required two witnesses to get it recorded, and that it was a deed from Bloomfield and his wife; but did not state to whom given, nor for what property. He believes he has signed other papers for Mr. Stafford, but cannot recollect any particular one. Mr. Stafford told him, his son and wife wanted to have the deed recorded, and that he was to have the handling of it. He further states, that he put his name to the paper as a neighborly act, and did not know whether it was right or wrong, or that there would be any difficulty in witnessing a paper that he had not seen executed. He never saw Maria Stafford, the complainant, execute or acknowledge any paper.

This transaction cannot be the same one adverted to by the two female witnesses of the defendant. This was in 1826—that in 1824. The one was in August—the other in cold weather. One was before sunset—the other after candle-light. One was in the presence of witness and Stafford alone—the other in presence of a number of persons. Joseph B. Stafford and wife were present at the one, but not at the other. The witness does not say that this is the only paper he ever witnessed for Stafford. He says at one time that he believes he has witnessed others, but cannot recollect any particular paper so as to name it. Afterwards he states he has never witnessed any other deed or paper for him that he remembers.

Admitting all this to be true, I do not see how it is to impeach

the deed set up by the defendant. What paper it was that the witness signed, may be a subject for speculation : all the witness can say, is, that it was a deed from Joseph B. Stafford and wife ; but to whom given, or for what property, he cannot say. The complainant does not allege, that in 1826, she and her husband gave a deed, and therefore that the one in question is forged ; on the contrary, she expressly denies having ever given any deed for the property. Nor does the complainant allege that the deed was palmed upon her as a power of attorney, or some other instrument, and her signature thereby fraudulently obtained. She insists that the deed set up by the defendant is a false deed, and that the names of the grantors and the witnesses are false and forged. This witness does not prove that fact. Nor is it made out by the other subscribing witness, Edward Parent. He says, he cannot remember that he ever saw Maria Stafford execute a deed for her father's property. He recollects signing one paper for James Stafford. It was at the house of Joseph B. Stafford, when he (Stafford) lived between Englishtown and Cranbury. The paper was represented to be a power of attorney ; the witness did not see it executed. He has witnessed a number of papers for Mr. Stafford, both before and since. It is denied by the defendant that there was ever a power of attorney executed to him by the complainant and her husband. He states, that about the time the deed was given, his son executed a power of attorney to authorise him to collect from the executor of William Holmes, deceased, his wife's share of the personal estate ; and that this was the only letter of attorney that was given. On the contrary, Samuel Craft, who was one of the commissioners appointed to divide, and afterwards to sell the land, states expressly, that James B. Stafford produced before the commissioners a letter of attorney, given by Joseph B. Stafford and wife to James B. Stafford and wife ; and that at the time the commissioners were engaged in the performance of their duties, James B. Stafford and wife attended with them, under its authority. However much this may shake the confidence to be reposed in the defendant's answer, it does not materially affect the evidence bearing upon the main question. And if it be true that Parent did, at that time, witness a power of attorney, it does not necessarily follow

that he did not attest the deed, and that therefore it was a forgery.

There is certainly some mystery in the conduct of the defendant, about the division and sale of the land. He made application for a division in the names of Joseph B. Stafford and his wife, though they had no title. He declared that he acted in the matter as their agent. He was anxious that the property should be divided, and not sold ; that the land might be kept for the grand-child ; and in a letter to one of the commissioners, he finds fault with their proceedings, and says that Maria, the complainant, has never as yet had any thing out of the estate. The only explanation of which it appears susceptible, is, that it is not uncommon for purchasers of individual shares of real estate to apply for a division in the names of the original heirs, and act throughout rather as the attorney than the owner. In this instance, Mr. Stafford may not have cared to have it known, that he had an absolute conveyance of the whole property. His motive may have been impure ; his conduct may have been fraudulent, and he may appear utterly unworthy of credit ; he may have procured the conveyance by fraudulent misrepresentations, or the consideration may be altogether feigned ; and yet the question whether the deed was actually given remain unaffected.

Taking the whole case together, there is reason to believe, a mistake exists somewhere ; and it is to be hoped it is a mistake simply. It is not possible to reconcile all the evidence, or rather all the inferences deducible from it ; but, taking it together, I am satisfied that the weight of evidence is very clearly with the defendant, and that such a deed as is set up by the defendant was actually executed by the complainant and her husband : how obtained, and for what purpose, it is not for me to inquire.

This is purely a matter of fact, and I should have preferred its trial in another mode ; but as the amount in dispute is not large, and there are no serious difficulties on my mind as to the proper conclusion, I have not thought it advisable to put the parties to the expense of an issue.

Let the complainant's bill be dismissed, with costs.